IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| RABO AGRIFINANCE, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>MICHAEL R. BLISS, TIMOTHY S. BLISS, JUSTIN H. BLISS, J & S FINANCIAL CORPORATION, STEPHEN L. ADAMSON, and JARED ADAMSON,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br><br>Case No. 2:15-cv-00418<br><br><br>Judge Clark Waddoups |

## INTRODUCTION

This matter is before the court on a Motion to Dismiss brought by defendants J & S Financial Corporation, Stephen L. Adamson, and Jared Adamson (the J & S Defendants) under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 25.) A hearing on this motion was held on October 13, 2016, at which time the court took the matter under advisement. The court has carefully considered the memoranda and other materials submitted by the parties, the arguments of counsel, and the law and facts relating to the motion. For the reasons discussed below, the court GRANTS the Motion to Dismiss.

## FACTUAL BACKGROUND

Plaintiff Rabo Agrifinance, Inc. (Rabo) is a Delaware corporation with its principal place of business in St. Louis, Missouri. (Am. Compl. ¶ 1, Dkt. No. 20.) All defendants reside within the state of Utah for the purposes of 28 U.S.C. § 1332(a). (*Id.* at ¶¶ 2-10.) This court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a),

because there is complete diversity between the adversarial parties, and the matter in controversy before the court exceeds $75,000.

On January 6, 2012, Rabo made a loan of $11,944,494.53 to three dairies owned by the Bliss family: Revolution Dairy, Highline Dairy, and Robert and Judith Bliss dba Bliss Dairy (collectively, the Borrowers). (*Id.* ¶¶ 15-17.) The Borrowers hired the J & S Defendants as financial consultants to help them obtain financing for their dairies. (*Id.* at ¶ 35.) In deciding to fund the loan for the dairies, Rabo alleges that it relied on the Borrowers' written financial information for the years 2008 through 2011 as sent to them by the J & S Defendants. (*See id.* at ¶ 45.)

After the loan was funded, Rabo alleges that it discovered the financial information it received about the Borrowers was inaccurate. Rabo alleges it received three fraudulent pieces of information: (1) a June 30, 2011 financial statement, (2) a December 1, 2011 borrowing base report (Base Report), and (3) a December 31, 2011 Base Report. (*Id.* at ¶¶ 68-70.)

Rabo alleges the following, which the court accepts as true for purposes of the Motion to Dismiss: In the December 1, 2011 Base Report, the Borrowers represented that the accounts payable for the dairies as of December 1, 2011 was $98,474. (*Id.* at ¶ 41.) In the December 31, 2011 Base Report, the Borrowers represented to Rabo that the dairies' total net accounts payable as of December 31, 2011 was $749,282. (*Id.* at ¶ 44.) On January 6, 2012, Rabo, relying on the Base Reports, closed and funded the loan to the Borrowers. (*See id.* at ¶¶ 42-45.)

On April 17, 2012, Rabo received the Borrowers' 2011 financial statement that was prepared by an independent accounting firm and was intended to report on the dairies' financial condition as of December 31, 2011. (*Id.* at ¶ 48.) The 2011 Financial Statement should have been entirely, or at least materially consistent with the December 31, 2011 Base Report. However, it

2

was not. (*Id.* at ¶ 49.) Among other things, the 2011 financial statement revealed that the

Borrowers had underreported their accounts payable by over $2.5 million. (*Id.* at ¶¶ 52-53.)

On May 2, 2012, Rabo sent the J & S Defendants an email asking for an explanation

from both the Borrowers and the J & S Defendants of the reasons for the substantial and material

discrepancies between the December 31, 2011 Base Report and the 2011 Financial Statement.

(*Id.* at ¶ 50.) This suit was filed on June 12, 2015. (*See* Dkt. No. 1.) By Rabo's own admission it

had observed "substantial and material discrepancies between the December 31, 2011 Base

Report and the 2011 Financial Statement on May 2, 2012. (Am. Compl. ¶ 50, Dkt. No. 20.)

As time progressed, Rabo continued to discover the full extent of the fraud. After further

investigation Rabo became aware that the accounts payable was more than $8 million, which

was significantly higher than the $98,474 that was originally represented. (*Id.* at ¶ 57.) Rabo's

further investigation also revealed that the Borrowers had suffered a loss in 2011 of over $3.5

million, which was materially different from the profit of $813,000 the Borrowers originally

represented. (*Id.* at ¶¶ 58-60.)

Rabo seeks recovery from the J & S Defendants for (1) Common Law Fraud, (2)

Fraudulent Non-Disclosure, (3) Negligent Misrepresentation, (4) Aiding and Abetting Fraud, and

(5) Conspiracy. The J & S Defendants filed this Motion to Dismiss asserting that Rabo's fraud

claims are barred by the three-year statute of limitations, and that Rabo failed to adequately

allege a negligent misrepresentation claim due to the fact that the J & S Defendants did not owe

Rabo an independent duty outside of contract law.

## DISCUSSION

The court will first address the reasons why Rabo's fraud claims are barred by the statute

of limitations, and then will discuss the reasons why the J & S Defendants, as financial

consultants to the Borrowers, did not owe Rabo an independent duty to refrain from negligent misrepresentations in the preparation or delivery of a third party's financial statements.

1. **Statute of Limitations for Claims Grounded in Fraud**

Utah Code § 78B-2-305(3) provides for a three year statute of limitations for relief on the ground of fraud or mistake. The Utah Supreme Court has held the three year statute of limitations applies to all common law claims that are grounded in fraud. *See Hill v. Allred,* 28 P.3d 1271, 1276 (Utah 2001). All of Rabo's causes of action other than its negligent misrepresentation claim are grounded in fraud because all of these causes of action allege the same underlying theory that Rabo was fraudulently induced to enter into the loan. Therefore Rabo's claims for Common Law Fraud, Fraudulent Non-Disclosure, Aiding and Abetting Fraud,[1] and Conspiracy[2] are subject to the three-year statute of limitations period set forth in Utah Code § 78B-2-305(3) because all of these causes of action are grounded in fraud.

   a.  *Statute of Limitations Begins Upon Actual or Inquiry Notice of Fraud*

As a general rule, a statute of limitations begins to run "upon the happening of the last event necessary to complete the cause of action." *Russell/Packard Development, Inc. v. Carson*, 108 P.3d 741, 746 (Utah 2005). Damages is an essential element in order to bring a cause of action for fraud. *Dugan v. Jones,* 615 P.2d 1239, 1246 (Utah 1980). It is not necessary, however, for a "plaintiff to know the full extent of his injuries before the statute of limitations begins to run." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir.

---

[1] Utah courts have not yet recognized a claim for aiding and abetting fraud. Nevertheless, the court need not reach the question of whether Utah Courts would recognize such a claim because even if the claim were recognized it would be barred by the statute of limitations.

[2] Even if the claim for conspiracy to commit fraud was subject to a longer statute of limitations, the claim would still be barred because a claim for conspiracy to commit fraud is not a stand-alone cause of action. A party may not bring a civil conspiracy to commit fraud claim without also bringing the underlying fraud claim, which is barred here by the statute of limitations. *Corles v. Sabey,* 79 P.3d 974, 983 (Utah 2003).

1994). Utah courts adhere to the "benefit of the bargain rule" for determining damages in a fraud case. *See Lamb v. Bangart*, 525 P.2d 602 (Utah 1984). This means that "in an action for fraud and deceit the measure of damages is the difference between the actual value of what the party received and the value thereof if it had been as represented." *Id*. at 609. "A plaintiff is deemed to have discovered his action when he has actual knowledge of the fraud, or by reasonable diligence and inquiry should know the relevant facts of the fraud perpetrated against him." *Colosimo v. Roman Catholic Bishop of Salt Lake City*, 156 P.3d 806, 811 (Utah 2007) (internal quotations omitted).

Rabo was defrauded upon entering into the misrepresented loan with the Borrowers. Rabo's fraud causes of action, however, could not have been successfully brought until Rabo had become aware that it was damaged. Rabo had actual knowledge that it was defrauded when it received Borrowers' 2011 Financial Statement on April 17, 2012. On May 2, 2012, Rabo sent the J & S Defendants an email asking for an explanation from the Borrowers and the J & S Defendants of the reasons for the substantial and material discrepancies between the December 31, 2011 Base Report and the 2011 Financial Statement. Because Rabo admits it became aware of the substantial and material discrepancies at least by May 2, 2012, the court can be certain that the final necessary element of damages for its fraud claim was met on May 2, 2012 due to the fact that Rabo had actual knowledge of fraud at this date. (*See* Am. Compl. ¶ 50, Dkt. No. 20.)

Rabo contends that its claims should not be barred by the statute of limitations because it was not damaged until the dairies defaulted on their loan by filing for bankruptcy on January 27, 2013. This argument runs counter to Utah law and sound public policy. Utah law is clear that the statute of limitations begins upon the happening of the last event necessary to bring the cause of action. *Colosimo,* 156 P.3d at 810. Rabo cannot succeed on its theory that the statute of

limitations did not begin until the Borrowers defaulted unless it can show that at no time before the default of the loan could it have successfully brought a cause of action for fraud. As discussed earlier, Utah law provides a remedy for fraud before the fraudulently induced loan enters default. *See Lamb*, 525 P.2d 602. Remedies before default include rescission or the expectation damages of the value of now having an inferior loan. Because Rabo could have successfully brought a claim for common law fraud on May 2, 2012, the statute of limitations began on this day.

> b.   *Delayed Discovery of Extent of Fraud Does Not Toll Statute of Limitations*

Rabo further argues that it did not know the full extent of its damages on May 2, 2012. Rabo claims the statute of limitations for its fraud claims should start after May 2, 2012 because its damages got continually worse the more it investigated. Delayed discovery of the full extent of damages, however, does not toll the statute of limitations.

A "plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *See Indus. Constructors Corp.*, 15 F.3d at 969. Courts have explained that "where the injury, although slight, is sustained . . . the statute of limitations attaches at once . . . The running of the statute of limitations is not postponed by the fact that the actual or substantial damages do not occur until a later date." *See Louisiana-Pac. Corp. v. ASARCO Inc.*, 24 F.3d 1565, 1580-81 (9th Cir. 1994) (quoting *Steele v. Organon, Inc.*, 716 P.2d 920, 922 (Wash. App. 1986.)

Rabo was damaged for purposes of the statute of limitations by at least May 2, 2012, when it acknowledged it uncovered substantial and material discrepancies of over $2.5 million in accounts payable compared to what was originally represented. Because there was a remedy of either rescission or damages available on May 2, 2012, it does not matter that Rabo became

6

aware of additional damages as time went on. Rabo's fraud claims were filed on June 12, 2015, which was more than three years after the statute of limitations began on May 2, 2012, and therefore all of Rabo's fraud causes of action are untimely. Rabo's claims for Common Law Fraud, Fraudulent Non-Disclosure, Aiding and Abetting Fraud, and Conspiracy are therefore dismissed with prejudice.

2. **Rabo's Negligent Misrepresentation Claim is Timely, but Fails as a Matter of Law**

Under Utah law a claim for negligent misrepresentation is subject to a four year statute of limitations. *DOIT, Inc. v. Touche, Ross & Co,* 936 P.2d 835 (Utah 1996). Because Rabo was damaged on May 2, 2012, and filed suit on June 12, 2015, Rabo's claim for negligent misrepresentation is within the statute of limitations.

Raising a timely claim, however, does not prevent the claim from failing as a matter of law because the J & S Defendants, acting as financial consultants, did not owe Rabo an independent duty outside of contract law. In order to have a successful cause of action for negligent misrepresentation, the plaintiff has the burden to prove the defendant owed an independent duty of care that is separate from a contractual obligation. *See Davencourt at Pilgrims Landing Homeowners Ass'n v. Davencourt at Pilgrims Landing,* 221 P.3d 234 (Utah 2009).

Rabo alleges that the J & S Defendants, as financial consultants, owed Rabo an independent duty of care in preparing the Borrowers' Base Reports and in not making negligent representations about the Borrowers' financial status. As support for this duty, Rabo cites *Milliner v. Elmer Fox and Co.*, 529 P.2d 806 (Utah 1974), which stated that an accountant may have a duty to a third party lender in the preparation of financial statements when he or she knows the lender may rely upon the accountant's opinion. Rabo fails to cite a comparable case

where this duty has been applied to a financial consultant, but argues nonetheless that this duty should be extended to financial consultants.

Imposing a duty on certified public accountants to third party lenders is appropriate because they hold themselves out as verifying the accuracy of financial statements. The statement in *Milliner* recognizing a duty by accountants to third parties was driven by the expectation that accountants should reasonably understand that some users of a financial statement prepared by an accountant for the corporation would rely upon the accountant having certified its accuracy. *Id.* at 808.

Financial consultants such as the J & S Defendants, however, have a fundamentally different role. The J & S Defendants held themselves out as financial consultants principally responsible for securing loans by matching borrowers and lenders. Their role was much more akin to brokers than accountants. Imposing a duty on financial consultants such as the J & S Defendants to verify the accuracy of a borrower's financial statements would fundamentally change the nature of their role, and Rabo failed to point the court to any support for imposing such a duty. Although the J & S Defendants could arguably have owed an independent duty to their clients, the Borrowers, the court finds no support for the proposition that they owed an independent duty to third party lenders.[3]

Rabo has failed to establish that the J & S Defendants, as financial consultants, owed Rabo an independent duty outside of contract law to refrain from negligent misrepresentations. Rabo's claim for negligent misrepresentation must therefore be dismissed.

---

[3] This is not to say there is no cause of action for fraud to obtain a remedy against a financial consultant who falsifies financial statements, but that is not at issue here. A negligent misrepresentation cause of action, on the other hand, is for just that, negligence. As the law currently stands, a third party is not justified in relying on financial statements that were created or passed on by a third party that is not ordinarily in the business of verifying financial statements.

## <u>CONCLUSION</u>

For the foregoing reasons, the court GRANTS the defendant's Motion to Dismiss for failure to state a claim. (Dkt. No. 25.)  The Clerk of Court is directed to dismiss this action with prejudice as against J & S Financial Corporation, Stephen L. Adamson, and Jared Adamson.

DATED this 4th day of January, 2017.

BY THE COURT:

Clark Waddoups
United States District Court Judge